Samuel Shpunt et al., etc., Appellants, *v.* Machinery Merchants, Inc., Respondent.

(Supreme Court, Appellate Term, First Department, May Term—Filed June, 1920.)

**Corporations — power of executive officers — contracts — evidence.**

Express authority, like an express contract, may be shown by conduct as well as by words.

A corporation cannot so conduct its business as to place in the power of one of its executive officers the opportunity to create an impression that he was authorized to negotiate contracts, and reserve to itself, by secret means, a limitation upon his specific act directly within the sphere of his constant activity and performance of duty.

Appeal by plaintiffs from a judgment of the City Court of the city of New York in favor of the defendant, dismissing the complaint at the close of the whole case, after trial by the court with a jury.

Joseph & Alvin T. Sapinsky (Simon M. Sapinsky, of counsel), for appellants.

Samuel Sturtz, for respondent.

Mullan, J. The plaintiffs, furniture manufacturers doing business at Boston, Mass., under the style of Bay State Upholstering Company, on July 24, 1918, wrote to defendant, a domestic corporation engaged, in New York city, in the business of selling woodworking machinery, as follows:

" Machinery Merchants, Inc.,
                " New York, N. Y.:
    " Gentlemen.— We did not use your cylinder and bus planer. We would like to exchange these two

Appellate Term, First Department, June, 1920.   [Vol. 112.

machines with a balance in cash for an H. B. Smith 36 inch 3 drum sander, either new or built over.

" Kindly send your best quotations.

"   " Yours very truly,

"   " Bay State Upholstering Co."

The plaintiffs had previously bought from the defendant the cylinder and bus planer mentioned in the letter, and other machinery.

In reply to their letter the plaintiffs received the following letter, dated July 30, 1918:

" Bay State Upholstery Co.,
   " Boston, Mass.:

" Gentlemen.— We have yours of the 24th inst., answer delayed owing to the absence of the writer.

" Do you require an endless bed sander or a roll feed sander?   At the present time, we have no second hand machine of the 36" size, but can fill your requirements with a roll feed 42" or 48" sander.

" We should appreciate your advising us as to whether or not it will be convenient for you to have the writer call on you to go into the matter in detail.

" We are anxious to serve you and await your reply with interest.

"   " Yours very truly,

"   " Machinery Merchants, Inc.

"   " H. J. Rosenkranz,
   " *Sec'y.*"

The plaintiffs not having acknowledged the letter of July thirtieth, the following letter was sent to them, under date of August sixth:

" Bay State Upholstery Co.
   " Boston, Mass.:

" Gentlemen.— We wrote you recently for appointment with our Mr. Rosenkranz so that he may call to

see you in reference to trading your Cylinder and Bus planer for a 36″ three drum sander.

" Kindly let us know by return mail when it will be convenient for you to see our Mr. Rosenkranz, and oblige,

" Yours very truly,
" MACHINERY MERCHANTS, INC.,
" H. J. ROSENKRANZ,
" *Sec'y.*"

Plaintiffs replied to the August sixth letter as follows:

" *August* 9, 1918.

" MACHINERY MERCHANTS, INC.,
" New York, N. Y.:

" GENTLEMEN.— In reply to your letter of the 6th inst. wish to say that we would like to have your Mr. Rosenkranz call on us the week of August 12.   Please let us know just when he will call.

" Yours very truly,
" BAY STATE UPHOLSTERING Co."

Rosenkranz, the writer of the letters sent from the defendant's place of business, went to Boston on August fourteenth, called upon the plaintiffs, and, after negotiations extending over three hours, effected an arrangement to sell to the plaintiffs a forty-two inch H. B. Smith sanding machine for the sum of $1,300, agreeing to accept payment by taking three notes aggregating $700, and three machines owned by plaintiffs at a stipulated valuation of $600.   A contract, embodying those and other essential terms, was thereupon dictated by Rosenkranz and typewritten on a printed form of the defendant in which the defendant is repeatedly referred to as the selling party.   One of the terms of the printed form was: " This order is subject to accept-

ance or rejection by a properly authorized officer of the ' Company ' (' Company ' having been therein before described as ' Machinery Merchants, Inc.')." The contract was executed by the plaintiffs, and by " Machinery Merchants, Inc., By H. J. Rosenkranz." Rosenkranz was, at all the material times, the secretary of the defendant. The plaintiffs had not previously met, or had any dealings with Rosenkranz, in the course of their previous transactions with the defendant. In his conversation with the plaintiffs that led to the making of the written agreement, Rosenkranz appeared to be thoroughly acquainted with the sanding machine he was endeavoring to sell, and was able to describe it in detail. He was also able intelligently to fix a price on the plaintiffs' machines he agreed to take in part payment. Indeed, it was made very plain by his own testimony that he was a duly accredited salesman, acting constantly in that capacity. He returned to New York on August fourteenth, and on the followng day he, in the company's name, telegraphed plaintiffs: " Sander sold yesterday by this office, therefore do not ship machines, trying to locate another." On the same day he wrote the plaintiffs to the same effect, signing the letter " Machinery Merchants, Inc., H. J. Rosenkranz, Sec'y." Rosenkranz' communications were apparently written openly and in the ordinary course of the routine method employed in the defendant's office. It is not even suggested that they were made secretly so that the other officers and employees would not know of them. When the plaintiffs were notified that the sander they supposed they had bought had been sold to another purchaser, no suggestion was made as to any lack of power in Rosenkranz. The plaintiffs sued for damage due to the breach, and the defense was interposed that Rosenkranz was without authority to bind the defendant to the bargain he had negotiated on its

behalf.  Upon the trial, in addition to the undisputed facts hereinbefore set out, it was shown that under the by-laws of the defendant its secretary was to perform the ordinary duties of that office, as they are commonly enumerated in the by-laws of business corporations, there being no provision vesting in him any specific power to do anything that is not, in a strict and technical sense, secretarial in character.  The by-law dealing with the duties of the president provided that '' he shall sign and execute all contracts in the name of the company when authorized so to do by the board of directors.''  The plaintiff Shpunt, with whom Rosenkranz dealt in the matter, testified that Rosenkranz said nothing upon the subject of his authority to act for the defendant.  Rosenkranz testified that he told Shpunt that he, Rosenkranz, was without authority to act, and that the contract should be executed on defendant's behalf by one of its '' executive '' officers; and he justifies his actual signing of the contract by saying he did it to please Shpunt, who said: '' What you say goes, sign it personally.''

The complaint was dismissed at the close of the whole case, upon the ground that Rosenkranz had neither express nor implied authority to bind the defendant to the bargain.  We are of the opinion that in so disposing of the case the learned court erred, and that, were it not for the question of fact raised by Rosenkranz' testimony that he told plaintiffs that he was without authority, the authority question was, in the circumstances shown, determinable against the defendant as matter of law.  Even had a by-law of the defendant expressly provided that its secretary should not do anything that was not strictly secretarial in character, such a provision would be of no force as a limitation *per se,* as to a person not a member of the corporation, of an authority which, except for the by-

law, would be construed as within the apparent scope of the secretary's authority. *Rathbun* v. *Snow,* 123 N. Y. 349. The plaintiffs had the undoubted right — if Rosenkranz did not state he was without authority — to treat him as it would any other secretary the precise extent of whose powers was unknown to them. The nature of his office was merely one of the things that formed the body of circumstances upon the basis of which they were called upon to decide whether he had apparently been authorized to represent the defendant in the matter in question, and to bind it to a bargain. Unless it is to be said that a secretary of an ordinary small business corporation, whose purely secretarial duties obviously cannot occupy any considerable portion of his time, must be presumed, in spite of other and overwhelming evidence to the contrary, to be limited to the doing of such purely secretarial work, I think the facts disclosed here show an apparent authority in Rosenkranz to bind his company, and that they do it so plainly as not to require any statement of the reasoning that leads to such a conclusion. I am also of the opinion that the same facts, with the inferences naturally deducible therefrom, that disclose the apparent authority in Rosenkranz, compel, or at least warrant, the finding that Rosenkranz was actually given the authority to bind the company, and was thus " a properly authorized officer of the company " for the purpose in question. It would, it seems to me, be out of reason to permit a corporation so to conduct its business as to place in the power of one of its executive officers the opportunity to create the impression that he was authorized to negotiate contract, and reserve to itself, by secret means, a limitation upon his specific acts directly within the sphere of his constant activity and performance of duty. Express authority, like an express contract, may be shown by conduct as well as

by words, and the other officers, and the directors, of the company, may well be deemed to have expressly permitted Rosenkranz to act as a selling officer, with the rights that such an officer normally and customarily feels free to exercise in the business world. There has been a somewhat tardy, but increasingly plain, trend of judicial thought toward holding corporations to contracts that they would be the boldest to assert were authorized, in case the contracts should turn out well for the company, but which they claim to have been made without authority when it later transpires that the company cannot perform either at all or with profit to itself. Judgment reversed, and new trial ordered, with costs to appellants to abide the event.

WAGNER, J., concurring in the result.

BIJUR, J. (concurring). I concur also on the ground that the limitation placed upon the defendant's form of contract: '' This order is subject to acceptance or rejection by a properly authorized officer of the company '' manifestly had reference only to contracts negotiated by persons other than officers of the company — salesman for example, and that read in the light of common sense and the ordinary experience of mankind, the stress is to be laid not on the words '' properly authorized '' but on the word '' officer '' as distinguished from salesman or mere employee. Rosenkranz was an officer of the company, and is shown from the previous correspondence and the circumstances of the case, to have been permitted to have all the appearance of being, if he was not actually, '' a properly authorized officer.''

Judgment reversed and new trial ordered, with costs to appellants to abide event.